UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ASHLEY HANDZLIK, as Parent and Next
Friend of C.H., a minor,

    *Plaintiff*

v.

UNITED STATES OF AMERICA,

    *Defendant*

Civil Action No.

## COMPLAINT

NOW COMES the Plaintiff, ASHLEY HANDZLIK (hereinafter referred to as "ASHLEY"), as Parent and Next Friend of C.H. (hereinafter referred to as "C.H."), a minor, by and through her attorneys, Garmey Law, and complains against the Defendant, the United States of America, as follows:

## NATURE OF THE CASE

1. This medical malpractice action arises against the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*

2. This action alleges medical malpractice committed by employees of Harrington Family Health Center, ("HFHC"), a Federally Qualified Health Center under the Department of Health and Human Services Centers for Medicare and Medicaid Services.

3. C.H. was under the care of agents and employees of the HFHC since he was seven years old. During that time, he presented to HFHC's agents and employees with a myriad of medical symptoms, including hearing abnormalities, difficulty swallowing, difficulty breathing, and being uncharacteristically fatigued for his age.

4. During their treatment of C.H., agents and employees of the HFHC, were made aware that lab results for C.H. indicated unusually high AST and ALT liver enzymes on December 26, 2018, (66 IU/L and 81 IU/L, respectively) and on November 21, 2021, (107 IU/L and 122 IU/L, respectively). These agents deviated from applicable standard of reasonable care by failing to follow up on these abnormal lab results with further lab testing.

5. On April 13, 2022, C.H. (who was then approximately twelve years old) was brought to Calais Regional Hospital Emergency Department for extreme chest pains. The hospital conducted labs on C.H. and noted his AST and ALT levels were unusually high, at 115 IU/L and 120 IU/L respectively and noted that these elevated levels required C.H. to be seen by his primary care physician for follow-up care.

6. Once again, despite repeating the labs and finding heightened liver enzymes, HFHC made no immediate referral to a pediatric specialist for further evaluation and workup.

7. By September 1, 2022, C.H. presented to NL Pediatric Gastroenterology and underwent further labs that demonstrated a heightened CK level, indicative of a muscular disease.

8. C.H. was referred to Northern Ligh Pediatric Neurology where further labs were conducted, finding elevated levels of CK (1059 IU/L), ALT (160 IU/L), and AST (164 IU/L). The lab results prompted the neurologist to recommend genetic testing, which revealed that C.H. suffers from Pompe disease (GSD II).

9. Because of the late diagnosis, C.H. has lost a significant amount of muscle function and his disease has progressed significantly.

10. Since his diagnosis C.H. has been placed on a strict and regular regiment of enzyme replacement therapy in Boston and will continue to do so for the foreseeable future.

11. Tragically, HFHC and its agents and employees failed in their duty to act as reasonable medical providers, and ignored and failed to follow-up with C.H.'s irregular enzyme levels, beginning as early as December 2018.

12. As a result of HFHC's negligence, C.H. suffers lifelong injuries, including but not limited to, advanced muscle deficiency and a progression of Late Onset Pompe Disease.

13. Had the agents and employees of the HFHC acted with reasonable care and according to the standards of care in their professions in caring for C.H., they would have immediately reconducted labs after C.H.'s December 2018 ER visit, which would have immediately found evidence of muscular disease and prompted a referral to a neurologist. This would have saved C.H. from the worst of his devastating consequences.

14. HFHC's agents and employees' professional negligence and substandard care in the treatment of C.H., caused him to suffer permanent, painful and severely disabling injuries.

## PARTIES

15. Plaintiff Ashley Handzlik is the Parent and Next Friend of Plaintiff C.H., a minor, and both are residents of the Town of Lubec, in the County of Washington, and State of Maine.

16. The United States of America is the proper defendant in this case under the Federal Tort Claims Act, 28 U.S.C. §2671. Defendant operates a health care facility known as HFHC in the Town of Harrington, County of Harrington, State of Maine, which is a Department of Health and Human Services Center for Medicare and Medicaid Services.

## JURISDICTION AND VENUE

17. This action arises under the Federal Tort Claims Act, 28 U.S.C. §2671, *et seq.* This Court has jurisdiction of this matter under 28 U.S.C. § 1336.

18. An attorney representing the Plaintiff timely submitted to the Department of Health and Human Services ("DHHS") a Notice of Claim form which was received on or about March 6, 2024. The DHHS denied the claim on or about September 4, 2024.

19. Venue is proper in the District of Maine pursuant to 28 U.S.C. § 1402(b) because the Plaintiff resides in Lubec, which is within this judicial district.

20. Pursuant to Local Rule 3(b), this action has been properly filed in Bangor because the events giving rise to this claim occurred in Washington County.

## FACTS

21. In the operation of HFHC in Harrington, Maine, the Defendant held itself out as a health care facility in which Defendant's agents and employees would use the degree of care, skill, diligence and attention exercised by hospitals and family health centers generally.

22. HFHC was operated by the Defendant, and Defendant acted through its agents and employees, including doctors, physician's assistants, nurses and other hospital personnel over which Defendant exercised control and supervision.

23. During the period of September 2018 through the present, C.H. has been under the care of agents and employees of the HFHC.

24. On December 15, 2018, at the age of seven, C.H. presented to the Down East Community Hospital Emergency Department with complaints of a sore throat and throat swelling in the absence of any other symptoms. A streptococcus test was negative. In fact, C.H. was presenting with signs and symptoms of Pompe disease.

25. During their treatment of C.H.., agents and employees of the HFHC failed to follow up with further lab testing after lab results for C.H. indicated unusually high AST and ALT liver enzymes on December 26, 2018, (66 IU/L and 81 IU/L, respectively) and on

November 21, 2021, (107 IU/L and 122 IU/L, respectively). Again, these abnormal readings were red flags for Pompe disease.

26. On December 28, 2018, C.H. reported to HFHC specifically to follow-up for his December 26, 2018, emergency room visit at Down East Community Hospital in which his lab results demonstrated unusually high levels of AST and ALT liver enzymes.

27. At his December 28, 2018, appointment at HFHC, no follow-up labs were taken and no plan was put in place to recheck his labs.

28. At this time, C.H., at seven years old, demonstrated difficulty swallowing for over a month, as well as a history of an irregular heartbeat, and hearing difficulties. These were due to his Pompe disease.

29. C.H. continued to exhibit these symptoms as well as fatigue during the day and muscle aches.

30. The applicable standard of care for a healthcare provider rendering treatment to a child required monitoring C.H.'s liver enzyme levels and retesting them. In the event his liver enzymes remained high upon retesting, the standard of care required a referral to a pediatric neurologist for further work-up.

31. These standards were not followed. Instead, HFHC failed to appreciate C.H.'s high liver enzymes, as indicated from the December 26, 2018, lab results, and failed to retest C.H. to determine if his enzymes remained consistent or were reduced to a healthy level.

32. Over the next several years, C.H. would return to HFHC with presentation of his symptoms. On each of these visits, HFHC's providers deviated from the standard of care by failing to follow up on his elevated labs. Over the course of those years, there were at least ten

missed opportunities to intervene on C.H.'s behalf and spare him from the worst consequences of his condition.

33. On November 21, 2021, Ashley brought C.H., now ten years old, back to Down East Community Hospital Emergency Department for significant intermittent chest pains.

34. That day, the Emergency Department conducted labs showing unusually high levels of AST and ALT, with findings of 107 IU/L and 122 IU/L, respectively.

35. Once again, the standard of care for a healthcare provider rendering treatment to a child required monitoring C.H.'s liver enzyme levels and retesting them. In the event his liver enzymes remained high upon retesting, the standard of care required a referral to a pediatric neurologist for further work-up.

36. Once again, however, HFHC failed to appreciate C.H.'s high liver enzymes, as indicated from the November 21, 2021, lab results, and failed to retest C.H. to determine if his enzymes remained consistent or were reduced to a healthy level.

37. On April 13, 2022, C.H. was brought to Calais Regional Hospital Emergency Department for extreme chest pains after he began to "getting shaky and a little dizzy" during a basketball game. It was reported that he appeared tired and was minimally responsive upon transport to the hospital.

38. Calais Regional Hospital conducted labs on C.H. The results showed unusually high AST and ALT levels, at 115 IU/L and 120 IU/L respectively, and it was noted that these elevated levels required C.H. to be seen by his primary care physician for follow-up care.

39. C.H. presented to HFHC for follow-up care on May 3, 2022, where it was noted his labs on April 13, 2022, demonstrated heightened levels of AST and ALT liver enzymes that required repeat testing and follow-up care.

40. On May 16, 2022, repeated labs demonstrated even higher AST and ALT levels, at 138 IU/L and 136 IU/L, respectively.

41. On May 18, 2022, Ashley called HFHC for C.H.'s lab results.

42. On May 20, 2022, HFHC responded to Ashley that some of C.H.'s liver enzyme levels lowered, while others rose, and its agents suggested it was appropriate to refer C.H. to a specialist in Bangor. Ashley agreed.

43. On June 1, 2022, Ashley called HFHC because she had yet to receive a referral.

44. HFHC acknowledged it was supposed to refer C.H. to a specialist in Bangor but had not done so.

45. On June 2, 2022, Ashley called HFHC again to check if HFHC made a referral and it had not done so.

46. On June 21, 2022, HFHC finally made a referral to NL Pediatric Gastroenterology under "moderate" urgency.

47. The standard of care for a healthcare provider rendering treatment to a child required informing the pediatric patient's mother of her son's results and immediately referring the pediatric patient to a specialist, including a gastroenterologist and/or pediatric neurologist for further workup.

48. HFHC's failures to notify Ashley of C.H.'s elevated liver enzymes and failures to immediately refer C.H. to a specialist were violations of this standard of care.

49. HFHC further failed to immediately refer the pediatric patient to a specialist, even after Ashley called to check on the status of the referral.

50. On September 1, 2022, C.H. presented to NL Pediatric Gastroenterology and underwent further labs that demonstrated a heightened CK level, indicative of a muscular disease.

51. C.H. also explained his ongoing symptoms of unusual fatigue, periods when he feels weak and has trouble walking, leg pain, and shortness of breath at rest.

52. NL Pediatric Gastroenterology conducted labs on C.H., now eleven years old, finding elevated levels of CK (1059 IU/L), ALT (160 IU/L), and AST (164 IU/L). The lab results prompted the neurologist to recommend genetic testing, which was the standard of care.

53. On October 20, 2022, genetic testing revealed C.H. suffers from Pompe disease (GSD II).

54. Upon C.H.'s diagnosis, he was transferred to a pediatric neuromuscular specialist at Boston Children's Hospital who determined that C.H. had lost a significant percent of his muscle function.

55. The extent of C.H.'s permanent injuries would have been avoided if HFHC, through its agents and employees, had not failed in its obligation to appreciate and further monitor C.H.'s enzyme levels from his emergency room appointments, and make timely referrals to specialists for further evaluation and testing. Such early intervention, which was not only possible but required under the standard of care, would have made all the difference to young C.H.

## COUNT I
## (NEGLIGENCE)

56. Plaintiff Ashley Handzlik, as Parent and Next Friend of C.H., a minor, repeats and realleges the above allegations as if set forth herein in full.

57. Defendant's agents employees were careless and negligent and breached the standard of care for medical providers when they negligently failed to appreciate C.H.'s unusually high liver enzyme levels, revealed in labs conducted at Down East Community Hospital Emergency Department on December 26, 2018, and November 21, 2021, and failed to follow-up to conduct repeat testing, especially in light of C.H.'s myriad of symptoms, including shortness of breath, difficulty swallowing, fatigue during the day, hearing difficulties, muscle pain and weakness, and an irregular heartbeat.

58. As a direct and proximate result of the carelessness and negligence of the Defendant's employees, C.H. suffered severe pain, injury, loss of enjoyment of life, emotional distress, medical expenses, lost earnings capacity and permanent impairment.

59. The United States of America is legally responsible for the negligence of C.H.'s treaters at the HFHC.

WHEREFORE, Ashley Handzlik, as Parent and Next Friend of C.H., a minor, requests that judgment be entered in her favor against the Defendant for damages which this Court deems reasonable, together with interest and costs.

DATED at Portland, Maine this 3rd day of March, 2025.

/s/ Christopher Harmon
Christopher A. Harmon, Esq. Bar # 5432
Terry D. Garmey, Esq. Bar #1656
Alexis Garmey Chardon, Esq. Bar #5932
GARMEY LAW,
482 Congress Street, Suite 402
Portland, ME  04101
charmon@garmeylaw.com
tgarmey@garmeylaw.com
achardon@garmeylaw.com
207-899-4644
*Attorneys for Plaintiff*